### HELMER v. CHOTIN.

### No. 16611.

Court of Appeal of Louisiana. Orleans.

April 18, 1938.

Irwin W. Rosenthal, of New Orleans, for appellant.

K. V. Richard, of New Orleans, for appellee.

JANVIER, Judge.

Miss Mildred Helmer prays for judgment against Joseph Chotin in the sum of $414. She alleges that her automobile, while undergoing repairs in a service station which she charges was owned and operated by the said Chotin, was destroyed by fire which originated through the carelessness of the said Chotin or of his employees. She avers that the value of the car was $375, and that she had given Mr. Chotin $39 for the purchase of parts which were to be installed.

Chotin denies that he was the operator of the said service station, though he admits that he owned the building in which it was operated. He contends that he had leased the building to one Harry Ranval, who, on his own account, was engaged in the automobile repair business. He also denies that the fire which destroyed the automobile resulted from negligence.

In the district court there was judgment dismissing the suit, and plaintiff has appealed.

■ That the fire resulted from negligence on the part of Ranval is clear. He

was engaged in repairing the gasoline tank on a motor truck which had been intrusted to the repair station by another customer. The tank leaked, and it was Ranval's purpose to solder the leak. In doing so he was using a red-hot soldering iron, when gasoline or vapor in the tank ignited. As a result of the fire the truck, plaintiff's car, and most of the building were destroyed.

It is true that Ranval states that he had rinsed out the tank before he had applied the soldering iron, and it is also true that he testified that such an iron would not ignite gasoline or vapor. We are convinced, however, in the first place, that he could not have been careful in rinsing out the tank, because it is evident that he left in it sufficient combustible material to ignite and to initiate a conflagration; and, in the second place, we conclude that to apply a red-hot iron to a tank containing gasoline or explosive vapors is negligence regardless of Ranval's testimony that to do so is not dangerous. Obviously, it caused the fire in this instance.

█ The record contains much evidence concerning the relationship of Chotin, the defendant, to the repair station. He contends that he had no connection therewith, except as lessor of the building. Miss Helmer, on the other hand, maintains that Chotin was not only the owner, but was also the proprietor of the repair shop, which was in the rear of the gasoline and oil service station located in front and which Chotin admits he operated. Counsel for plaintiff points to three items of evidence which, he maintains, show that Chotin actually operated the shop. He says that Chotin stated to the police officer who investigated the fire that he was the owner and operator of the establishment; that he made a similar statement to Mr. Miazza, who adjusted the loss on the building; and that he signed the proof of loss, which contained a statement that he was the operator of the shop as well as the owner of the building.

The police officer, Carrigan, who investigated the fire and made a police report, fails to completely corroborate the statement that Mr. Chotin admitted that he was the operator of the service station. His testimony in some respects is confusing, but at the end he clearly distinguished between the front establishment, the service station of which Chotin admitted he was the proprietor, and the rear establishment, the repair shop which Chotin claimed was op-

erated by Ranval. For instance, he testified as follows:

"A. I did ask him about the oil station, who operated the oil station.

"Q. What about the balance of the place? A. He said he owned the place in the back.

"Q. Then he owned the entire place? A. Yes, sir, he owned the entire place, yes, sir, and operated the oil station."

This shows that Chotin, in talking to the officer, clearly distinguished the oil station which he operated from the rear portion in which the repair shop was conducted. The portion of the police report on which counsel for plaintiff relies refers to "a fire which originated from an explosion of a gasoline tank on automobile, which was being repaired by Harry (W) Ranval, 43 years, mechanic * * * while in a garage in the rear of No. 1839 Adam Street, corner Cohn Street, which place is operated as an oil station by J. A. Chopin (W) of No. 2525 Cambronne Street." Counsel for plaintiff contends that this is a statement to the effect that Chotin operated the entire establishment. But, in view of Officer Carrigan's testimony, from which we have quoted, it is clear that what the police report intended to state was that No. 1839 Adam street is operated as an oil station by Chotin, and not necessarily that the garage in the rear, in which the fire occurred, was a part of that establishment.

The testimony of Mr. Miazza, the insurance adjuster, may be interpreted as counsel for plaintiff would interpret it. Mr. Miazza states that, according to his records, Mr. Chotin was not only the owner, but also the occupant of the building in which the fire occurred; but he later stated that "that is the best of my recollection. We usually only deal with the owner of the property while I fill in this report." From this statement it appears that Mr. Miazza, when he called on Mr. Chotin to adjust the loss resulting from the destruction of Mr. Chotin's building, knew that Mr. Chotin was the owner, and he assumed that he was also the operator. Mr. Miazza also testified that Mr. Chotin referred to Harry Ranval by stating that he was working on the car at the time the fire took place. But this does not mean that he was working as an employee of Chotin.

As showing that Chotin was the operator of the shop, plaintiff places great reliance on the fact that, when it became necessary to buy parts for the automobile which was being repaired, she gave the money for

456

these parts to Chotin. On her behalf it is argued from this that Mr. Chotin must have been the proprietor. But Chotin explains that it was at the request of Ranval that he called on Miss Helmer for the money merely because, by chance, he happened to be making a trip into the neighborhood in which Miss Helmer worked. Miss Helmer admits that she paid the money as a result of a telephone conversation with Ranval, in which Ranval stated that $39 was needed to buy parts.

Miss Helmer vehemently denied that she would have trusted Ranval with the repair of her car, stating that, though she had known him for some time and that, though he had called at her house on various occasions, she would not trust him. Yet the record shows that she had dealt with him on several occasions in the past, and that, in fact, she had never known Chotin at all, except, possibly, to buy gasoline at his station, until Ranval commenced working in the repair shop in the rear of Chotin's establishment.

There is other evidence to which we have not referred, some of which tends to corroborate plaintiff and some of which tends to show that she is incorrect, and that defendant actually did not operate the shop nor hold himself out as the operator. Since the District Judge found in favor of defendant on this disputed issue of fact, and since there is much testimony which, if true, justifies his conclusion, it is obvious that his judgment is not manifestly erroneous.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, affirmed.

Affirmed.